The State v. Charles Ellis.

## THE STATE v. CHARLES ELLIS, *Appellant.*

1. **Statements Admitted as Testimony of Absent Witness:**
CONTINUANCE. Where a party, for the sake of avoiding a continu-
ance, admits that an absent witness, if present, would swear to cer-
tain statements, these statements are as much a part of the evidence
in the cause as if the witness were present at the trial and testified
to them before the jury, and should be so considered by the jury
in making up their verdict.

2. **Manslaughter:** "REASONABLE PROVOCATION." The term "reason-
able" may properly be used in an instruction as descriptive of the
kind of provocation which will reduce homicide from murder to
manslaughter.

3. **Homicide:** PASSION, AS FIXING THE GRADE OF THE OFFENSE. The
passion which will reduce homicide to the grade of manslaughter is
an excited state of mind produced by some lawful provocation, *e. g.*, a
blow. That which will reduce it to murder in the second degree is
the same state of mind produced by some just cause of provoca-
tion short of lawful provocation, *e. g.*, grievous and degrading words
of reproach.

4. ———: ———: QUESTIONS OF LAW AND FACT. What words of re-
proach and attendant circumstances will be deemed a just cause of
provocation, and constitute the homicide murder in the second de-
gree is in every case a question of law for the court. Whether
the state of mind necessary to make the killing the lowest grade of
murder was, in fact, superinduced by such provocation and actually
existed at the time of the killing, is a question of fact for the jury.

5. ———: INSTRUCTIONS. It is for the court to determine what grade
or grades of homicide the evidence tends to establish, and it is the
duty of the court in instructing the jury to confine itself to such
grade or grades.

6. ———: DELIBERATION. Only such murders are deliberate as pro-
ceed from deep malignity of heart or are prompted by motives of
revenge or gain.

7. ———: INSTRUCTIONS, HARMLESS ERROR. This court will not reverse
a judgment in a case of homicide because the trial court gave in-
structions as to murder in the second degree, when the act, if not
done in self-defense, must have been murder in the first degree, if
the jury have found that it was the latter; and it does not matter
that the instructions incorrectly defined the offense of murder in
the second degree. The error could not have been prejudicial to
the appellant.

8. ———: PREMEDITATION. In defining the term "premeditatedly,"

| | |
|---|---|
| 74 | 207 |
| 96 | 650 |
| 96 | 651 |
| 74 | 207 |
| 98 | 449 |
| 74 | 207 |
| 102 | 660 |
| 74 | 207 |
| 105 | 219 |
| 74 | 207 |
| 109 | 672 |
| 74 | 207 |
| 117 | 637 |
| 74 | 207 |
| 119 | 476 |
| 74 | 207 |
| 121 | 146 |
| 74 | 207 |
| 130 | 647 |
| 131 | 395 |
| 74 | 207 |
| 136 | 125 |
| 74 | 207 |
| 147 | 555 |
| 74 | 207 |
| 152 | 70 |
| 74 | 207 |
| 158 | 605 |
| 158 | 606 |
| f159 | 377 |
| 74 | 207 |
| 162 | 677 |
| 74 | 207 |
| 167 | 297 |
| 74 | 207 |
| 102a | 612 |
| 74 | 207 |
| 170 | 3630 |
| 171 | 6477 |
| 171 | 3519 |
| 171 | 3588 |
| 74 | 207 |
| 178 | 3423 |

the trial court said: "It means thought of in the sense of thought over." *Held*, an erroneous definition, because it gave to premeditation an element of deliberation which does not belong to it.

*Appeal from St. Louis Court of Appeals.*

AFFIRMED.

*Merrick & Bishop* for appellant.

*D. H. McIntyre*, Attorney General, for the State.

HOUGH, J.—The defendant was convicted of murder in the first degree in the St. Louis criminal court, and sentenced to be hanged. He appealed to the court of appeals, where the judgment of the criminal court was affirmed.

The opinion of the court of appeals contains the following statement of facts: "There was a house on the Levee in St. Louis called the 'Red House,' where negro steamboatmen were accustomed to meet for the purpose of gambling. The defendant Ellis was an employe of the house. On the day of the homicide the deceased, Mack Sanders, had been in the house, had given trouble, and had been put out by a policeman; but upon promising to behave himself he was allowed to come back. A little after that he took the money of some one, which was lying on the table, and was compelled by the defendant to give it up. Later in the day the proprietor, having occasion to go out, left the defendant in charge of the place. The deceased got into a dispute with one Tom Kelley about the reckoning of a throw of dice; Kelley claimed that he had won twenty cents of the deceased, which the deceased refused to pay. There was a large number of negroes in the room at the time. The defendant, hearing the noise, came in. The deceased in the meantime had drawn and opened a common pocket-knife, and threatened, in the rough language used by such persons, to cut any one who interfered with him. The defendant got upon the table,

examined the checks, which were in a box, and then, taking a pistol from the box in which it was kept, ordered the deceased to pay the twenty cents which Kelley claimed of him, and to put up his knife. According to the defendant's testimony, the deceased said 'I will drink my heart's blood before I will put up the knife.' An affidavit as to what Kelley and another person, both of whom were colored steamboatmen, would testify to if present, was admitted in evidence by the State to prevent a continuance. It was there admitted that these witnesses, if present, would testify that the defendant told the deceased several times to put up his knife, and the deceased refused; that the defendant got down from the table, whereupon the deceased advanced upon him with his open knife in his hand, saying that he would cut any son of a bitch that came towards him, whereupon the defendant fired this pistol shot. No witness testified at the trial that the deceased was advancing on the defendant at the time the defendant fired the shot. On the contrary, the evidence of the State's witnesses tends to show that at the time the deceased was in the act of backing towards the door with the apparent purpose of escaping from Kelley who was pressing him to pay the money which he had won from him.

"How then does the case stand upon this evidence? It is a case where two persons quarrel in a public house, and one of them draws a knife and threatens to use it if interfered with. The person who is in charge of the house in the absence of the proprietor comes in, commands him to put up his knife, and on his refusing to do so takes a pistol out of a box and shoots and kills him."

It may be stated in addition that the affidavit for a continuance stated that one of the absent witnesses would swear that it was not until the deceased advanced upon the defendant in a threatening manner, with a knife in his hand about twice as large as an ordinary pocket knife, that the defendant fired. Other witnesses stated that at

13—74

the time of the shooting the deceased and the defendant were about six or seven feet apart.

While the statement of the court of appeals sets forth substantially the material facts developed at the trial, yet in summarizing these facts in the last two sentences of its statement, it seems to have entirely ignored as a part of the evidence in the cause, the facts which it was admitted by the State the absent witnesses of the defendant would testify to if present. These facts were as much a part of the evidence in the cause as if the absent witnesses had been present at the trial and testified to them in the presence of the jury, and the judge of the criminal court very properly so instructed the jury in response to an inquiry from them as to whether said facts should be considered by them in making up their verdict. The statute on this subject is as follows: "If in any such case the adverse party will consent that on the trial the facts set out in the application, or affidavit, as the facts which the party asking the continuance expects to prove by the absent witnesses, shall be taken as, and for, the testimony of such witness, the trial shall not be postponed for that cause; but the facts thus set out shall be read on the trial, and shall be taken and received by the court or jury trying the cause as the testimony of the absent witness; but such facts may be contradicted by other evidence, and the general reputation of such witness may be impeached as in the case of other witnesses who testify orally or by deposition."

*1. STATEMENTS ADMITTED AS TESTIMONY OF ABSENT WITNESS: continuance.*

The charge of the court to the jury was as follows: "The charge in this cause is for murder in the first degree. Against the accused the indictment alleges that he shot and killed one Mack Sanders, and that he did so feloniously, willfully, deliberately, premeditatedly and of his malice aforethought. By the term 'feloniously' is meant wickedly and unlawfully, from a depraved heart or a mind which regards not social obligation, but is fatally bent on mischief. By the term 'willfully' is meant intentionally,

not by accident. By the term 'deliberately' is meant a cool state of the blood, not in that heated state which the law denominates passion; and the passion here meant is not that which comes of no cause, but that, and that only, which is produced by some reasonable provocation. By the term 'premeditatedly' is meant thought of beforehand, but for any length of time however short. It means thought of in the sense of thought over. If any act be thought of at all, even for a moment, and a design to perpetrate it is fully formed in the mind before the act is done, it is in law a premeditated act, but if not thus thought of before it is done, it is not a premeditated act. By the term 'malice' is meant the intentional doing of a wrongful act without just cause or excuse for it; and by 'malice aforethought' is meant to do an evil deed formed in and by the mind before the doing of the deed is begun. In other words, by 'malice aforethought' is meant simply a mental condition, and as applied to the facts of this case, the terms mean an intent actually to take the life of Sanders fully formed and existing in the mind of Ellis at some time, however short, before the act of killing was done.

"With this explanation of the meaning of these technical terms, the court instructs you that if from the evidence you believe and find that, at the city of St. Louis, within three years next before the finding of the indictment, the defendant did, with the pistol alleged, loaded as alleged, make an assault upon the said Mack Sanders; that with it he did shoot and kill said Sanders in the manner described in the indictment, and that he did all this feloniously, willfully, deliberately, premeditatedly and of his malice aforethought, you will find him guilty of murder of the first degree, as by the indictment he is charged. And unless from the evidence you so believe and find, you will find him not guilty of murder of the first degree.

"Murder is either of the first or second degree. To constitute the killing of a human being murder of the first degree, the elements of willfulness, deliberation, premedi-

tation and malice aforethought must exist together in the act. To constitute such a killing murder of the second degree, all these elements must exist together in the act except that of deliberation. If, therefore, because of the absence of deliberation you acquit the defendant of the offense charged, but from the evidence believe and find that, at the city of St. Louis, and within three years next before the finding of the indictment, the defendant did, with the pistol alleged, loaded as alleged, make an assault upon the said Sanders; that with it he did shoot, and, by thus shooting did actually kill him as alleged, and that he did all this not deliberately but feloniously, willfully, premeditatedly and of his malice aforethought, you will find him guilty of murder of the second degree, and unless from the evidence you so believe and find, you will acquit him.

" The right to defend one's self against the violent assaults of others, is a right which the law concedes to all men. In repelling danger not of his own seeking, whether such danger be real or only apparently real and impending, the law permits one to use force even to the extent of slaying his assailant, if that be necessary to avert the apprehended danger, and in such cases the killing will be justifiable, although it may afterward turn out that the appearance was false. But one so placed must act at his peril from the force of the circumstances in which he stands, for his conduct will be subject to judicial review and must be justified or condemned by the facts and circumstances which on his trial are shown to have surrounded him. The defendant, therefore, may have done the shooting complained of and still be innocent of any offense against the law. If at the time he did it he had reasonable cause to apprehend from Sanders, and in good faith did apprehend the immediate danger of some serious injury to his own person, and to avert such danger he shot, and if at the time he did so he had reasonable cause to believe, and in good faith did believe it necessary, in order to protect himself from the infliction of such injury, for him to

shoot, then, and in that case, his shooting was neither felonious nor malicious, and you ought to acquit him on the ground of necessary self-defense. But if he voluntarily sought the difficulty and himself brought on the attack, you ought not to acquit him on this ground, for if that be true the law of necessary self-defense has no application in this case.

"You are the sole judges of the credibility of the witnesses. You must determine for yourselves the degree of credit to which their testimony is entitled, and if you believe that any one of them has willfully sworn falsely to any material fact in the case, you are at liberty, if you think proper so to do, to disregard the whole of such witness' testimony. The law clothes the defendant with the presumption of innocence, and allows this presumption to continue until overcome by proof which establishes his guilt to your satisfaction and beyond a reasonable doubt, and the burden of proving his guilt rests with the State. But when this presumption has been thus overcome, and where his guilt has been thus clearly made to appear, it demands his conviction. If he is guilty of murder of the first degree and by the evidence you are thus convinced of it, the law demands at your hands his conviction of murder of the first degree. If he is not guilty of murder of the first, but is guilty of murder of the second degree, the law demands his acquittal of the one and his conviction of the other. And if he is not guilty of murder of either degree, or if by the evidence you are not convinced of it beyond a reasonable doubt, it demands his acquittal. By the terms ' convinced beyond a reasonable doubt ' is meant convinced to a moral certainty. If you convict the defendant of murder of the first degree, your whole duty is simply to pronounce him guilty. The punishment to be inflicted is for the court, not for you to say. But if you acquit him of murder of the first, and convict him of murder of the second degree, you will assess his punishment at

imprisonment in the penitentiary for any term not less than ten years."

The defendant asked nineteen instructions, all of which were refused. It will only be necessary to notice three of these instructions, as the others were sufficiently embodied in the general charge of the court. These three are as follows:

12. The court instructs the jury that before they can find the defendant guilty of murder in the first degree, as charged in the indictment, they must believe from the evidence that the killing of the deceased, Sanders, was committed by the defendant, Ellis, willfully, deliberately, premeditatedly and of his malice aforethought, and that to constitute murder in the first degree there must concur willfulness, deliberation, premeditation and malice aforethought. " Willfully " means intentionally, not accidentally ; " deliberately " means in a cool state of the blood, and is used to characterize what are ordinarily termed cold-blooded murders, such as proceed from deep malignity of heart and are prompted by motives of revenge or gain; "premeditatedly " means thought of beforehand for any length of time however short; "malice " means an intention to kill or do some great bodily harm to another without just cause or excuse; " aforethought " means thought of beforehand for any length of time however short.

13. The court instructs the jury that although they may believe from the evidence that the killing of deceased was committed by the defendant intentionally, willfully, premeditatedly and with malice aforethought, yet if they further believe from the evidence that such killing was committed without deliberation, but in an excited or passionate frame of mind, even without adequate cause or provocation, then they can find the defendant guilty only of murder in the second degree; and the word " deliberation " as used in this instruction, and in the statute and indictment, implies a cool state of the blood, and is in-

tended to characterize what are usually termed cold-blooded murders, such as proceed from deep malignity of heart and are prompted by motives of revenge or gain.

14. The court instructs the jury that if they believe from the evidence that the killing of deceased was committed by defendant, and that defendant, in so killing deceased, acted upon a sudden passion engendered by reasonable provocation, then the presumption of malice will be negatived, and the killing although intentional will be manslaughter in the fourth degree.

Instruction numbered fourteen, in regard to manslaughter was properly refused, as there were no facts

2. MANSLAUGHTER: "reasonable provocation." upon which to base it. It is correct, however, as an abstract proposition of law, although its soundness is denied by the court of appeals. Speaking of this instruction, that court said : " This is not the law. As already stated, provocation which will reduce homicide to manslaughter is well defined in law, and is spoken of as a lawful provocation and not as a reasonable provocation." This instruction is in the exact language of the opinion of this court in the *State v. Curtis*, 70 Mo. 599, and the use therein, of the word "reasonable " in lieu of the word " lawful," was neither inadvertent, nor intended as an innovation upon the established criminal law. The word "reasonable" has been frequently employed in the same connection in the opinions of some of our most distinguished judges, and is similarly employed by the most eminent and authoritative writers upon criminal law. Mr. East, a writer of acknowledged accuracy, in his Pleas of the Crown, volume 1, page 232, says: " Whenever death ensues from sudden transport of passion or heat of blood, if upon a *reasonable* provocation and without malice, or if upon sudden combat, it will be manslaughter." Mr. Bishop, in his work on Criminal Law, volume 2, section 697, (6 Ed.,) says: " There must be sudden passion upon *reasonable* provocation, to negative the idea of malice."

In Wharton's Criminal Law, volume 1, (6 Ed.,) in section 969, and in the caption to section 987, the word " *reasonable* " is used in the sense of "lawful." In Russell on Crimes, volume 1, (7 Am. Ed.) page 580, it is said: "Whenever death ensues from the sudden transport of passion, or heat of blood upon a *reasonable* provocation and without malice, it is considered as solely imputable to human infirmity, and the offense will be manslaughter." In the *State v. Holme*, 54 Mo. 153, (*loc. cit.* 165,) this court, speaking through Wagner, J., defined manslaughter to be a homicide " committed under the influence of passion or in the heat of blood produced by an adequate or *reasonable* provocation." In *Young v. The State*, 11 Humph. 200, the supreme court of Tennessee used the following language: " The books say: Whenever death ensues from sudden transport of passion or heat of blood, if upon *reasonable* provocation and without malice, or upon sudden combat, it will be manslaughter." East P. C., 232; Foster, 313; Roscoe's Crim. Ev., 557. There must be sudden passion upon *reasonable* provocation, to negative the idea of malice. In the *State v. Zellers*, 2 Halst. 220, Kirkpatrick, C. J., in his charge to the jury, quoted on page 474 of Horrigan & Thompson's Cases on Self-defense, said: "Manslaughter is where a person kills another upon a sudden transport of passion or heat of blood upon a *reasonable* provocation and without malice." An intentional killing under the influence of sudden passion engendered by reasonable provocation, being manslaughter at common law, is by our statute made manslaughter in the fourth degree. R. S., § 1250; *State v. Edwards*, 70 Mo. 480. We have referred in this connection to the foregoing authorities wherein the term " reasonable" is employed as descriptive of that provocation which will reduce a homicide to manslaughter, in order to correct a manifest error on the part of the court of appeals, and also because the words " reasonable provocation" were improperly used by the trial court in its charge to the jury, in defining the term " deliberately." A

cursory examination of the text-books and adjudicated cases will show that the words "reasonable," "adequate," "sufficient," "lawful" and "legal" are used interchangeably in connection with the word "provocation" in defining manslaughter.

Instruction numbered thirteen, asked by the defendant, was properly refused. It has never been held by this court, in any case, that a homicide committed in an "excited or passionate frame of mind," is murder in the second degree. The passion or excitement of mind spoken of in the *Curtis case*, in defining murder in the second degree, is the passion spoken of in the books; that *state of mind* which, when produced by lawful provocation, will reduce the homicide to manslaughter. It is the same state of mind, though produced by a different cause, which was indicated by the terms "passion" and "temporary excitement" as used by this court in its opinion in the *State v. Holme*, 54 Mo. 153. It was there said: "It is true that if a homicide be committed under the influence of passion or in the heat of blood produced by an adequate or reasonable provocation, and before a reasonable time has elapsed for the blood to cool and reason to resume its habitual control, and is the result of the temporary excitement by which the control of reason was disturbed, rather than any wickedness of heart, or cruelty or recklessness of disposition, the offense is manslaughter only and not murder." Mr. Bishop says: "The passion must be such as is sometimes called irresistible; yet it is too strong to say that 'the reason of the party should be dethroned' or he should act 'in a whirlwind of passion.'" Vol. 2, (6 Ed.,) § 697.

In the case of the *State v. Hill*, 4 Dev. & Batt. 494, Gaston, J., after stating that if the defendant killed the deceased in a transport of passion, excited as stated by him, it would have been a clear case of manslaughter, proceeds as follows: "Not because the law supposes that this passion made him unconscious of what he was about to

3. HOMICIDE: passion, as fixing the grade of offense.

do, and stripped the act of killing of an intent to commit it, but because it presumes that passion disturbed the sway of reason and made him regardless of her admonitions. It does not look upon him as temporarily deprived of intellect, and therefore not an accountable agent, but as one in whom the exercise of judgment is impeded by a violence of excitement, and accountable therefore as an infirm human being. We nowhere find that the passion which in law rebuts the imputation of malice, must be so overpowering as for the time to shut out knowledge and destroy volition. All the writers concur in representing this indulgence of the law to be a condescension to the frailty of the human frame, which during the *furor brevis* renders a man deaf to the voice of reason, so that *although the act done was intentional of death*, it was not the result of malignity of heart, but imputable to human infirmity." The state of mind referred to in the phrase "passion or excitement of mind," employed by this court in the *Curtis case*, is the state of mind described in the foregoing extract.

It is to be observed, also, that it is this *state of mind*, when produced by lawful provocation and not the provocation itself, which makes the killing manslaughter, for, although there may have been what is denominated lawful provocation, yet if such provocation did not, in fact, produce the *state of mind* above described, or if, having produced it, there was sufficient time for the blood to cool before the killing, the killing would be murder at common law, and, under our statute, murder in the first degree. It is because the party provoked is, in consequence of the provocation, and by reason of the infirmity of our nature, under the dominion of passion, and not subject to the control of reason, that the killing is declared to be manslaughter. Now, at common law, if *precisely the same state of mind* which, when produced by a blow, will constitute the killing manslaughter, is produced by such grievous and degrading words of reproach as are naturally and justly calculated to produce that state of mind, the instant killing, in such state of mind, of the

provoker will be murder. In a moral point of view, certainly, the offense is no greater in the one case than in the other, but still the law declares it to be murder. The decisions of this court in the *State v. Wieners*, 66 Mo. 13; *The State v. Curtis*, 70 Mo. 599, and the *State v. Robinson*, 73 Mo. 306, also declared it to be murder, but not murder of the highest grade; because in such case, although there may be premeditation as defined by this court, there is no deliberation within the meaning of the law. The cases put in the *State v. Wieners*, and *State v. Robinson*, are examples of what may be termed a just cause of provocation, which will constitute the homicide murder in the second degree, as distinguished from a lawful provocation, which will reduce it to manslaughter. *Vide* also *Copeland v. The State*, 7 Humph. 479.

What words of reproach and attendant circumstances will be deemed a just cause of provocation, and constitute the homicide murder in the second degree, is in every case a question of law for the court; and whether the state of mind necessary to make the killing the lowest grade of murder, was, in fact, superinduced by such provocation and actually existed at the time of the killing, is a question of fact for the jury. And the cases must be decided as they arise, each upon its own facts. Even as to what is denominated lawful provocation this court said in the case of the *State v. Nueslein*, 25 Mo. 111, (*loc. cit.* 127): "It is impossible in the nature of things for the court to lay down a rule explaining lawful provocation in every given case. This must depend upon the varied facts and matters introduced in evidence; and when facts are offered in evidence for the purpose of showing a lawful provocation, it is the duty of the court to pronounce whether, in law, such facts amount to a lawful provocation or not."

Nor do we see the propriety of instructing a jury in every case of murder, as to what constitutes that technical

5. ——: instruc-  heat of passion, or other sudden passion,
tions.            which will mitigate a homicide, when the
facts in evidence do not tend to show the existence of
any such passion.    It is for the court to determine what
grade, or grades, of homicide the evidence tends to estab-
lish, and it is the duty of the court to confine its instruc-
tions to such grade or grades.   This has been repeatedly
decided.   Proceeding upon this ground this court has held
in the *State v. Talbott*, 73 Mo. 347 ; *State v. Lewis, post*, p.
222, and *State v. Erb, ante*, p. 199, that although the sudden
passion which excludes deliberation and mitigates the hom-
icide, was incorrectly defined, it was wholly immaterial,
because there was no evidence tending to show the exist-
ence of any such passion.   Where there is *no evidence* of
such sudden passion, a jury may be instructed as follows :
" Deliberately means done in a cool state of the blood, not
in sudden passion engendered by a lawful or some just
cause of provocation, and the court instructs you that in
this case there is no evidence tending to show the existence
of any such passion or provocation." When there *is evi-*
*dence* of such passion and provocation, it will be the duty
of the court to declare, as a matter of law, whether the
provocation sought to be established is such as will miti-
gate the homicide, and, if so, to leave to the jury the ques-
tion whether such provocation and passion did in fact
exist.

The instruction under consideration was rightly refused
for the further reason that it declares that only such mur-
6. ——: delibera-   ders are deliberate as proceed from deep
tion.              malignity of heart *and* are prompted by mo-
tives of revenge or gain.   The word " *and* " which we have
italicized is incorrectly used for "or," which makes a very
material difference in the sense.   Defendant's counsel evi-
dently intended to embody in this instruction a passage
from the case of the *State v. Curtis, supra*.   It is not usu-
ally a very safe or commendable practice to embody pas-
sages taken from a general discussion of a subject in

instructions, for the reason that they are apt to be too abstract and general in their nature to be useful as guides to a jury. The same error is also found in the twelfth instruction, and it was, therefore, rightly refused.

From the facts in evidence, we are of opinion that the homicide in question was either murder in the first degree
7. ——: instruc- or homicide in self-defense. The court instions, harmless
error. structed the jury as to the law of self-defense and as to what constituted murder in the first and second degrees. There was no necessity for an instruction as to murder in the second degree, but the defendant could not have been injured because one was given. For reasons heretofore given in this opinion the court erred in defining "deliberately" to mean not in heat of passion produced by some reasonable provocation, but as there was no evidence of any provocation which could reduce the homicide to murder in the second degree, this case stands in this particular precisely like the cases of the *State v. Talbott*, the *State v. Lewis* and the *State v. Erb*, and that error in this case must be, as it was in those cases, regarded as an immaterial one.

In defining "premeditatedly" the trial court used the following expression: "It means thought of in the sense
8. ——: premed- of thought over." This expression gives to
itation. "premeditation" an element of deliberation which does not belong to it since the recent decisions of this court distinguishing between "premeditation" and "deliberation." It is, therefore, erroneous, and if this were a proper case for an instruction as to murder in the second degree, the judgment would have to be reversed for this error. As it is, however, the error is a harmless one. The latter part of the charge defining malice aforethought, as applied to the facts of this case, taken by itself, is subject to criticism, but taken in connection with what precedes it, and with that portion of the charge declaring the law of self-defense, we do not think it possible for the jury to have misconstrued it or to have been misled by it. We

see no substantial objections to the other portions of the charge. We may remark, however, in this connection, that we do not understand why the trial court, in a case like the present, should limit the jury to a finding of the facts charged within three years next before the finding of the indictment. There is no limitation to a prosecution for murder in either of its degrees. R. S., § 1703. The judgment of the court of appeals will be affirmed. All the judges concur.