## THE STATE v. O'HARA, *Appellant.*

1. **Homicide:** SUDDEN PASSION: LAWFUL PROVOCATION. Passion suddenly aroused from a lawful provocation will reduce a homicide from murder to manslaughter, because there is then no malice aforethought.

2. ——: ——: ——: INSTRUCTION. An instruction that there was no evidence to show the existence of such passion, or of a lawful provocation, held improperly given in this case ; such instruction destroying the effect of those given by the court on manslaughter, and the evidence in the case warranting an instruction on murder in the second degree.

3. **Murder in First and Second Degrees:** INTENT TO KILL, WHEN PRESUMED. While there can be no murder in either the first or second degrees, without an intent to kill, yet this intent need not always be a specific one ; for where the act is malicious and manifestly dangerous to human life and produces death, the law will presume the intent.

4. **Murder in Second Degree:** GREAT BODILY HARM. Where the intent was not to take life, but only to do great bodily harm, it is murder in the second degree if death results.

5. ——. Murder in the second degree embraces all cases of murder at common law in which there was no specific intent to kill, but in which the law presumes an intent to kill, and which are not made manslaughter or murder in the first degree by statute.

*Appeal from St. Louis Criminal Court.*—HON. G. S. VAN WAGONER, Judge.

REVERSED.

*George Bullock* for appellant.

(1) The court erred in not giving an instruction for murder in the second degree. *State v. Hays*, 23 Mo. 323 ; *State v. Joeckel*, 44 Mo. 234 ; *State v. Hudson*, 59 Mo. 135 ; *State v. Wieners*, 66 Mo. 11 ; *State v. Phillips*, 24 Mo. 475. (2) The defendant was entitled under his

own evidence to an instruction for manslaughter in the third degree. *State v. Branstetter*, 65 Mo. 149; *State v. Jones*, 79 Mo. 441; *State v. Starr*, 38 Mo. 277; *State v. Dieckman*, 11 Mo. App. 538; affirmed, 75 Mo. 570; *State v. Wilson*, 85 Mo. 134; *State v. Banks*, 73 Mo. 592; *State v. Murphy*, 14 Mo. App. 73; *State v. Cooper*, 71 Mo. 436; *State v. Tate*, 12 Mo. App. 327. (3) The defendant was entitled under his own evidence to an instruction for manslaughter in the fourth degree. *State v. Douglass*, 81 Mo. 231; *State v. Ellis*, 74 Mo. 207; *State v. Dieckman*, 11 Mo. App. 538; affirmed, 75 Mo. 570; *State v. Wilson*, 85 Mo. 134; *State v. Banks*, 73 Mo. 592; *State v. Murphy*, 14 Mo. App. 73; *State v. Cooper*, 71 Mo. 436; *State v. Tate*, 12 Mo. App. 327. (4) The court erred in its definition of the word "wilfully." See cases cited *supra*. (5) The court erred in not defining "just cause of provocation" and "lawful provocation." *State v. Branstetter*, 65 Mo. 149; *Dyer v. Brannock*, 2 Mo. App. 432; *Digby v. American Ins. Co.*, 3 Mo. App. 603; *Young v. Ridenbaugh*, 67 Mo. 574; *State v. Lauri*, 1 Mo. App. 371; *State v. Andrew*, 76 Mo. 101; *State v. Ellis*, 74 Mo. 207. (6) The court committed error in instruction number four in instructing the jury that "in this case there is no evidence tending to show the existence of any such passion, or of a just cause of provocation, or a lawful provocation." *State v. Foley*, 12 Mo. App. 431. (7) An erroneous instruction is not cured by a subsequent one which properly declares the law. *State v. McNally*, 87 Mo. 644; *State v. Hill*, 69 Mo. 451; *State v. Dearing*, 65 Mo. 530; *State v. Mitchell*, 64 Mo. 191; *State v. Nauert*, 2 Mo. App. 295. (8) The court should give proper instructions whether asked for or not. *State v. Banks*, 73 Mo. 592. To constitute murder in the first degree it is necessary that the killing should have been done feloniously, wilfully, deliberately, premeditatedly, and with malice aforethought; and if either of these ele-

ments is lacking, the homicide is not murder in the first degree.

*B. G. Boone*, Attorney General, for the state.

(1) The evidence made a case of murder in the first degree. Where the evidence, including that given by a defendant, makes a case of murder in the first degree, it is not error in the trial court to refuse an instruction for murder in the second degree. *State v. Jones*, 79 Mo. ——; *State v. Collins*, 81 Mo. 652; *State v. Wilson*, 88 Mo. 13. (2) The instructions given by the court properly declared the law, and have been repeatedly approved by the court. (3) Appellant complains of the definition of the word "wilfully." It is defined as "intentionally, and not by accident." This is sufficient. It was not necessary to define "a just or lawful provocation." This term is used in defining "deliberation," and this court has never required each particular word of a definition to be itself defined. It is only the technical words constituting the elements of the crime charged that are to be defined. *State v. Snell*, 78 Mo. 240; *State v. Kotovsky*, 74 Mo. 247; *State v. Banks*, 73 Mo. 592; *State v. Wieners*, 66 Mo. 13. Counsel for defence insist that the testimony of the accused entitled him to an instruction for murder in the second degree. In the *Jones*, *Collins*, and *Wilson cases*, above cited, the testimony of the defendants was much stronger than in the case at bar, but in each of these cases the court ruled that the evidence did not warrant an instruction for murder in the second degree.

BLACK, J.—The defendant was indicted for killing Mary McColler by striking her with a beer glass. The trial resulted in a verdict of guilty of murder in the first degree.

From the evidence it appears that of three adjoining second-story rooms, all opening upon a veranda

reached by a single flight of stairs communicating with a rear yard, the defendant and his wife occupied one; the deceased, her son and daughter occupied another; and a Mr. Smith and wife occupied the third. The defendant and the son of the deceased had been in the habit of drinking together, and on several occasions had created a disturbance by their boisterous conduct. The deceased complained to the defendant, and remonstrated against such actions. All this led to a quarrel between them; and it is shown that they were on unfriendly terms down to the tragedy in question, which occurred on a Sunday evening just after the lamps had been lighted. Mrs. Smith, who was on the veranda at the time, testified that defendant and his wife came out of their room. The defendant then directed his wife to go back to their room. It is claimed that he intended to go and collect some money due him. On the way down the stairs he turned around, and addressing himself to the deceased, who was sitting on the veranda in front of her room, said that his prayer was that the curse of the Almighty might rest upon her and that she would get paralyzed. She said something in a low voice which the witness did not understand. The defendant said, when at the bottom of the steps: "If I hear anything more from you, I'll come up there and fire you over the banisters." He then went back, caught the deceased by the waist, and attempted to execute his threat. In the struggle she got loose and ran to her room, threatening to call a policeman. The defendant followed, and, as he entered the door, seized a beer glass; she cried out: "Don't hit me with the glass." The witness did not see what transpired in the room, but it appears he hit her, driving pieces of glass into her head and breaking the skull and brain structure, from which she died in a few days.

Defendant, in his own behalf, testified that as he was going down the steps deceased said she hoped to God he

would break his leg ; that he replied in language which is substantially the same as that attributed to him by the other witness ; that he thought she was in a fighting trim and he would go up and see if his door was locked. He says :  "When I got up stairs Mrs. McColler was on the south side ; she was in a fighting attitude, and I ran up to her and caught hold of her arms.  We tusseled and she jerked me towards her door—she jerked away ; that pulled me forwards towards her door, when she got a club in her hand ;" that he then caught the glass and hurled it at her, not intending to kill her, and then went down the stairs.  On the cross-examination, he says he went up the stairs to see if his door was locked and to tell his wife to keep it locked ; that deceased came at him and he caught her by the wrists ; that he did not follow her into the room, but she jerked and that pulled him in.

The court instructed as to murder in the first degree, justifiable homicide in self-defence, and manslaughter in the third, and fourth degrees.  The chief grounds of complaint are that the court failed to instruct upon murder in the second degree ; and erred in its definition of "deliberately," which is as follows :

"That by the term deliberately is meant done in a cool state of the blood.  It does not mean brooded over or reflected upon for a week, or a day, or an hour, but it does mean an intent to kill, executed by a person not under the influence of a violent passion suddenly aroused ; and the passion here referred to is that and that only which is produced by what the law recognizes as a just cause of provocation, or a lawful provocation ; and the court instructs the jury that in this case there is no evidence tending to show the existence of any such passion, or of a just cause of provocation, or of a lawful provocation."

It is the last clause only of this instruction to which objection is made.  This instruction seems to be formu-

lated after the one suggested in *State v. Ellis*, 74 Mo. 207-220; but it is there clearly stated that such an instruction may be given when there is *no evidence* of sudden passion, and enough is there said to show that the portions of this instruction complained of are not proper where there is evidence of such passion. Passion suddenly aroused from a lawful provocation will reduce a homicide from murder to manslaughter, because there is then no malice aforethought. 2 Bish. Crim. Law [7 Ed] sec. 679; *State v. Curtis*, 70 Mo. 595-599; *State v. Ellis*, 74 Mo. 207-215. The instructions given in this case upon the subject of manslaughter are based, in part, upon the fact that the killing was done in the heat of passion. The clause of the instruction in question plainly states that there is no evidence in the case of violent passion suddenly aroused, or of a lawful provocation. It in effect destroys the instruction upon the subject of manslaughter, for the jury might well have concluded that it was an assertion that there was no evidence of heat of passion in the case.

The court should have instructed on the subject of murder in the second degree; and it may be stated that the qualification to the instruction as to the meaning of "deliberately" was practically a refusal to instruct as to murder in the second degree. If the defendant is guilty of murder in the first degree it is not because the case comes within any of the specific cases mentioned in section 1232, Revised Statutes, but because it comes within the words "any other kind of wilful, deliberate and premeditated killing." In such cases the killing, to be murder in the first degree, must have been accompanied with an intent to take life. The *killing* must be premeditated. *State v. Holme*, 54 Mo. 153. Mr. Wharton says, when speaking of these statutes classifying murder: "Murder in the second degree includes all cases of common-law murder where the intention was not to take life, of which murder, when the intent was only to do great

bodily hurt, may be taken as a leading illustration." Whart. Crim. Law [8 Ed.] sec. 388. Now in this case, if the evidence of defendant is worthy of belief, and it must be treated as the evidence of any other witness for the purpose of giving instructions, it might well be concluded that he did not intend to take the life of the deceased, though he was bent upon doing her some great bodily harm—though actuated by malice aforethought. The act, then, being the wrongful killing of a human being with malice aforethought, but without deliberation, as that word is now defined by this court, would be murder in the second degree. It may be said there can be no murder in either degree when there is no intent to kill; but this question received a full consideration in the case of *State v. Wieners*, 66 Mo. 13, where it is shown that in many cases, where the act is malicious and manifestly dangerous to human life and does produce death, the law will presume an intent to kill. Modifying the conclusion there stated, on page 27, to suit the present statute, it may now be said: Of murder in the second degree are also all those cases of murder at common law in which there was no specific intent to kill, but the law presumes the intent to kill, which are not declared manslaughter by our statute and are not specifically made murder in the first degree by the section of the statutes before cited.

We conclude there was abundant evidence in this case tending to show that the killing was from malice aforethought, but without deliberation, and that an instruction for murder in the second degree ought to be given. The judgment, for the reason before stated, is reversed and the cause remanded for a new trial. All concur.