## THE STATE v. WILSON, *Appellant.*

1. **Criminal Law:** PRACTICE: INSTRUCTIONS. Instructions upon murder in the first degree will not be reviewed upon appeal from a conviction of murder in the second degree.

2. ———: SELF-DEFENSE. Self-defense is a plea of necessity, and, to be availed of, it must be shown that defendant] took the life of the deceased in order to save his own, or to protect his person from great injury. Antecedent hostile expressions and threats are no justification. The danger must be apparent and impending, and one from which defendant cannot, without further hazard apparently, deliver himself, except by striking the fatal blow.

3. ———: MANSLAUGHTER IN SECOND DEGREE. The killing of a human being, without a design to effect death, in a heat of passion, but in a cruel or unusual manner is manslaughter in the second degree.

4. ———: MANSLAUGHTER IN THIRD DEGREE. The killing of a human being, without a design to effect death, in a heat of passion, by a dangerous weapon constitutes manslaughter in the third degree.

5. ———: MURDER. In homicide an attempt to kill is necessary to constitute the offense either murder in the first degree or in the second degree.

6. ———: MURDER IN SECOND DEGREE. Murder in the second degree includes not only homicides with intent to kill, committed in the heat of passion caused by provocation short of lawful provocation, but such as would naturally excite such heat of passion, but also all murders at common law not declared by statute to be murder in the first degree or manslaughter; it includes cases where the act done is malicious and manifestly dangerous to human life and produces death, although the intent may have been only to do great bodily harm; in the latter cases the law presumes the intent to kill.

7. ———: HEAT OF PASSION. Heat of passion is not confined alone to cases where there is provocation; but it may arise from fighting which is not preconcerted but upon a sudden quarrel.

The State v. Wilson.

8. ——: ——: MANSLAUGHTER IN THIRD DEGREE. A homicide committed with a dangerous weapon in a fight arising upon a sudden quarrel, where there was no previous preparation on the part of the defendant to kill the deceased or to do him great bodily harm, and no circumstances of express malice or of undue advantage on the defendant's part constitutes manslaughter in the third degree under Revised Statutes, 1879, section 1244.

9. —— : ——: MANSLAUGHTER IN THE FOURTH DEGREE. In such case if the weapon be not dangerous and there was no design to effect death the killing is manslaughter in the fourth degree.

*Appeal from Mercer Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED AND REMANDED.

*Stephen Peery, M. F. Robinson* and *H. J. Alley* for appellant.

( 1 ) The tenth instruction given on the part of the state is not warranted by the evidence and is calculated to mislead the jury. ( 2 ) Instruction number 2 prayed for by the defendant and refused by the court ought to have been given ; it is predicated upon section 1244, Revised Statutes, 1879, which is as follows : " The killing of another in a heat of passion without the design to effect death by a dangerous weapon in any case except when the killing of another is justifiable or excusable shall be deemed manslaughter in the third degree." These facts and conditions were all testified to by the defendant and the jury should have been permitted to pass upon them. The error in refusing instruction number 2 on the part of the defendant in relation to manslaughter in the third degree was not cured by instruction number 10 given on the part of the state as to murder in the second degree ( sec. 1242, Revised Statutes ), which provides for an entirely different state of facts.

*John M. Wood*, Attorney General, for the State.

The testimony shows this to be a case of murder ; and the court did not err in refusing instruction number 2, asked by defendant, as to manslaughter in the third degree. *State v. O'Hara*, 95 Mo. 59 ; *State v. Hardy*, 95 Mo. 455. But if the evidence warranted an instruction as to manslaughter in any degree at all, the court properly instructed on the second degree of that offense, and refused to instruct as to the third degree. *State v. Gassert*, 65 Mo. 352 ; *State v. Holme*, 54 Mo. 165 ; *State v. Dunn*, 80 Mo. 681 ; *State v. Edwards*, 70 Mo. 480 ; *State v. Ellis*, 74 Mo. 207 ; *State v. Wieners*, 66 Mo. 13.

BRACE, J.—The defendant was indicted in the circuit court of Mercer county for murder in the first degree, for killing James Franklin Graves, on the ninth day of September, 1887, and upon his trial was convicted of murder in the second degree and sentenced to imprisonment in the penitentiary for a term of thirty-five years, from which judgment he appeals.

It appears from the evidence that Wilson and Graves were neighbors, and men of good character ; that, for some months previous to the homicide, feelings of hostility existed between them, which manifested itself on several occasions, the particulars of which it will not be necessary to notice. The matter of difference that seems to have immediately led up to the difficulty will only be briefly stated. It appears that a public road ran along the premises of the deceased, a short distance from his house ; that the defendant owned a strip of ground running along the road between the line of the deceased and the road, which had been used by the deceased as a road ; that the defendant wanted him to change his road over this strip, but that

deceased neglected to do it, and the defendant, to prevent him using his strip of land as a road, had encumbered it with wood and brush, making it inconvenient for deceased to get to the public road over it, as he had formerly done ; that, on the morning of the homicide, deceased hitched up his wagon and team and drove down to his fence at another point on the public road, where he had been in the habit of going out into the road ; that, at this point, defendant, who was road overseer, with seven or eight other men, was at work on the road, and they had already ploughed and scooped out a ditch alongside the road, and between it and the fence of the deceased, from which it was distant four or five feet (about three feet wide and from eight to ten inches deep). Defendant was in the road beside the ditch, with a hoe in his hands, the handle of which was a white hickory sprout cut the preceding spring.

When the deceased reached the fence, he got down from his wagon and commenced letting down the fence, when the defendant said to him, " Frank, we have made you a crossing here," to which deceased replied : " You think you are damned smart in making a ditch there" and, after he laid down the fence, he came out on the road, got a shovel from one of the men, recrossed the ditch, and commenced sloping off the side of the ditch to make a crossing for his wagon. Defendant said, "Don't you fill up that ditch ; if you do, I will make you clean it out." Deceased said, "I am not filling it up." Defendant said " If you fill it up, I will make you pay for it." Deceased said " You will not make me do anything." Defendant then said, " You son of a bitch, I understand you have been carrying a revolver for me." Deceased said " It is not so ; whoever said I have been carrying a revolver for you or any one else, tells a damned lie." Defendant stepped across the ditch and said : " Do you mean to call me a damned liar ?" Defendant said, " No, I didn't mean to call you

a damned liar, but whoever said I carried a revolver for you, or any other man, is a damned liar, you are in the habit of it." Defendant then raised his hoe in a striking attitude, with the blade up, saying, "You call me a damned liar then?" and changing his hoe in his hand, pole up, repeated, "Do you say it." Deceased said he would say what he damned pleased, and defendant struck deceased on the right side of the head with the hoe-handle, and knocked him down, and struck, or pushed, him with the hoe after he was down. In the scuffle, deceased got hold of the hoe-handle, and defendant, in trying to pull it away from him, raised him up, and after he got up, deceased got hold of a neckyoke that was in the wagon and struck the defendant with it, and knocked him down. They then clutched, when they were parted by some of the persons present. During the altercation, and up to the time the deceased was struck, he had the shovel in his hand and was engaged in shoveling dirt with it and was so using it when he was struck by the defendant.

This is the substance of the evidence of the seven witnesses, who were present at the difficulty, and while no two of them gave exactly the same account of the transaction, they all agreed upon the main features of the transaction, except that one of them testified that at one time during the altercation, deceased, when the defendant had the hoe drawn, had the shovel up by his head. He did not see the fatal blow struck, and those, who did, testified that the deceased had the shovel on the ground when he was struck.

The defendant gave the following account of what transpired immediately preceding, and up to the time when the fatal blow was struck: "We were at work. Graves came up and spoke—think he said 'You are damned smart.' I said 'I don't know about the smart part; I am trying to fix you a good road.' Graves jumped out of the wagon, unhitched his team, let down

part of the fence, got a shovel and said, 'I will fix this.' Took shovel and throwed dirt at my feet, got out of the bank. I thought he was going to fill the ditch up. I said, 'Frank, I have heard you have been carrying a pistol for me;' he said 'it was a God damned lie.' I said 'I don't want you to say that any more.' Graves raised the shovel to his head like that, and said 'the way is open, pitch in.' I hoisted the hoe. I seen he was mad, and I—I did not want any trouble. My intention was not to hurt him. I would not have done it for anything in the world. I just wanted to keep him from killing me. When Graves drew the shovel I drew the hoe. I struck him to keep him from killing me." On his cross-examination, the defendant testified that the deceased called him a liar, and a son of a bitch, and that he only struck him one blow.

After the parties were separated, the deceased, not thinking he was seriously injured, undertook to resume his journey, had gone but a short distance when he became sick and stopped at the house of a neighbor, whence he was taken home and died that night from blood clot on the brain, caused by a fracture of his skull from the blow that defendant struck him. The next day the defendant went and delivered himself up to the authorities.

In the indictment, the offense is well charged, and no exception was taken to the action of the court in the admission and rejection of evidence, and the only ground for reversal urged is upon the instructions. The court instructed on murder in the first and second degrees, on manslaughter in the second decree, and on self-defense. The instructions on murder in the first degree are such as have heretofore received the approval of this court but as the defendant was not convicted of that offense, it will not be necessary to notice them. *State v. Snell*, 78 Mo. 240.

Nor will it be necessary to set out or criticise the instructions on self-defense as the evidence fails to disclose any self-defense in the case. Self-defense is a plea of necessity. The evidence fails to disclose that there was any necessity apparent to the defendant for taking this life in order to save his own, or his person from great personal injury. Antecedent hostile expressions and threats will not alone furnish such evidence. *State v. Rider*, 95 Mo. 474; *State v. Wilson*, 85 Mo. 134; *State v. Harris*, 59 Mo. 550; *State v. Harris*, 73 Mo. 287; *State v. Eaton*, 75 Mo. 587. The danger must be apparent and impending and one from which defendant cannot, without further hazard, apparently deliver himself, except by striking the fatal blow. There is not a particle of evidence in the whole case which tends to show that, from the beginning of the altercation until the fatal blow was struck, the defendant had any reason to believe he was in imminent danger. The only ground upon which to base the idea of apprehension of such impending danger is contained in that part of the evidence of the defendant, in which he says "Graves raised the shovel to his head like that, and said the way is open, pitch in." Conceding that Graves raised the shovel to a striking position, the defendant does not pretend to say that he was within striking distance, that he offered to strike or made any aggressive hostile demonstrations with it, but the very expression used, if he did raise it, indicated not that he was going to attack, but to defend himself. He never engaged in the combat at all until the fatal blow was struck, and until that blow was struck, there was apparently no moment during the whole altercation in which the defendant could not have safely withdrawn therefrom by simply saying and doing nothing. This was no case for an instruction on self-defense, and defendant would have had no cause to complain if none had been given, much less to criticise those that were given.

The court, having in other instructions correctly defined the words wilful, deliberate, premeditated and malice aforethought, gave the following instruction on murder in the second degree:

"7. If the jury believe from the evidence, beyond a reasonable doubt, that in September last, at Mercer county, Missouri, the defendant killed James Franklin Graves by striking him on the head with a handle of a hoe, and that, as used by the defendant, such handle of a hoe was a dangerous and deadly weapon and one likely to produce death or great bodily harm, and that such blow was struck by defendant wilfully, premeditatedly and of his malice aforethought, then the jury will find the defendant guilty of murder in the second degree, unless they further find that such killing was done deliberately so as to constitute the offense of murder in the first degree." The court also instructed on manslaughter in the second degree, but refused to give an instruction on manslaughter in the third degree.

Manslaughter in the second degree "is the killing of a human being without a design to effect death in a heat of passion, but *in a cruel or unusual manner*." Manslaughter in the third degree is the killing of a human being "without a design to effect death in a heat of passion, by a dangerous weapon." If there is any evidence in the case upon which an instruction for manslaughter ought to have been given, it would seem from the reading of the statute that the instruction ought to have been on the third instead of the second degree. In a sense, every killing may be said to be cruel, and killings may be said to be unusual, but surely it was not in this sense the legislature used the terms, for if so, they add no meaning to the section. It is not difficult to conceive the idea of a killing in the heat of passion that would be cruel or unusual, but within it would never be embraced the instance of one who in the heat of passion in the course of angry altercation struck a single fatal blow with an ordinary working implement

which he had in his hand at the commencement and during the entire progress of the altercation. Such a case falls exactly within the letter of the section defining manslaughter in the third degree if the implement was a dangerous weapon, on which and on manslaughter in the fourth degree, instructions in this case ought to have been given, if the defendant was entitled to an instruction on any degree of manslaughter.

In homicide, an intent to kill is an essential element to make the offense murder in the first or second degree, and so the court instructed the jury in this case. *State v. Gasset*, 65 Mo. 352 ; *State v. Peak*, 85 Mo. 191. Murder in the second degree however includes not only homicides with intent to kill, in the heat of passion caused by a provocation, short of lawful provocation, but that would naturally excite such heat, but also all those cases of murder at common law not declared by statute to be murder in the first degree or manslaughter ; in which class is included cases where the act done is malicious and manifestly dangerous to human life and does produce death, although the intent may have been only to do great bodily harm. In such cases the law presumes the intent to kill. *State v. O'Hara*, 92 Mo. 59 ; *State v. Wieners*, 66 Mo. 13 ; Wharton's Crim Law ( 8 Ed.) sec. 388.

The heat of passion that will take away the malice from the act thus manifestly dangerous to human life, and reduce the offense to manslaughter, must be caused by lawful provocation, and as we have seen, there was no such provocation in this case. The only provocation that appears in the case, and that only in the evidence of the defendant, is the opprobious epithets which he testifies the deceased applied to him, and the attitude of defense which he assumed with the shovel when he said "pitch in" and received the fatal blow. As there was no evidence on which to base an instruction for manslaughter, the error of the court, if error it was, in instructing on the second instead of the third degree

thereof was an error in the defendant's favor of which he cannot complain, having been found guilty of the lowest offense possible upon the evidence. *State v. Ellis*, 74 Mo. 207. I am therefore of the opinion the judgment ought to be affirmed.

In the foregoing opinion all concur, except as to what is said upon the right of the defendant to proper instructions upon manslaughter and the result flowing therefrom ; in regard to which a majority of the court are of the opinion that the trial court erred in not instructing for the defendant on manslaughter in the third and fourth degrees, in which view BARCLAY, J., and the writer hereof are unable to concur. The views of the majority of the court upon that question are expressed by BLACK, J., in a supplemental opinion herewith filed ; in reply to which it is deemed necessary only to add that there is no evidence that the deceased gave any provocation except epithets, and the attitude of defense he assumed with the shovel, or that he made any assault, or engaged in the fight with the defendant until after the fatal blow was struck, and that the act of the defendant in striking the fatal blow with the weapon he did, in the manner he did, was an act manifestly dangerous to human life. In accordance with the opinion of the majority of the court, the judgment will be reversed and the cause remanded for new trial.

### SEPARATE OPINION.

BLACK, J.—I am of the opinion that the instruction on manslaughter in the third degree, under section 1244, should have been given. Whether it should have been given depends upon the question whether the evidence tends to show a case of killing in the heat of passion. Heat of passion is not confined alone to cases where

there is *provocation.* Greenleaf says: "Voluntary manslaughter is where one kills another in the heat of blood ; and this usually arises from *fighting*, or from *provocation.* In the case of *fighting*, in order to reduce the crime from murder to manslaughter, it must be shown that the fighting was not preconcerted, and that there was not sufficient time for the passion to subside." 3 Greenl. Ev., sec. 121.

There is no evidence of previous preparation on the part of defendant to kill the deceased, or even to do him bodily harm. The case is wanting in circumstances of express malice. The defendant had the hoe in his hands when the quarrel began, and instead of striking with the blade, he turned it around and used the handle ; and this act tends to negative the idea of malice. The quarrel arose of a sudden. Says Russell: "If, therefore, upon a sudden quàrrel, the parties fight upon the spot, or if they presently fetch their weapons, and go into a field and fight, and one of them be killed, it will be but manslaughter, because it may be presumed that the blood never cooled." 1 Russell on Crimes ( 9 Ed.) 790. The same author, on previous pages, when speaking of *murder* from mutual combat says : " Where the combat is not an act of deliberation, but the immediate consequence of sudden quarrel, it does not of course fall within the foregoing doctrine ; yet in cases of this kind the law may come to the conclusion of malice, if the party killing began the attack with the circumstances of undue advantage." *Ib.* 728.

Here the defendant had a hoe and the deceased had a shovel, and the circumstances of undue advantage on the part of defendant is wanting. There is then evidence of heat of passion, and the instruction should have been given.

But the jury might well find that the hoe-handle used by the defendant was not a dangerous weapon.

This being so, the evidence tends to show a killing by a weapon, not dangerous, without a design to effect death and in the heat of passion, and the case is them manslaughter in the fourth degree. This must be so since the killing cannot be said to have been done in a "cruel and unusual manner." An instruction should therefore be given also upon manslaughter in the fourth degree.

If it be found that the weapon used was not a dangerous one, and the killing was without a design to effect death, then there is evidence of heat of passion which will reduce the killing to manslaughter, both upon the theory of a sudden quarrel and on the ground of *provocation*. Russell says: "It has been shown that the most grievous words of reproach * * * will not free the party killing from the guilt of murder, if upon such provocation a deadly weapon was made use of, or an intention to kill, or to do some great bodily harm, was otherwise manifested. But if no such weapon be used, or intention manifested, and the party so provoked give the other a box on the ear or strike him with a stick or other weapon not likely to kill, and kill him unluckily and against his intention, it will be only manslaughter." 1 Russell on Crimes ( 9 Ed.) 783; 3 Greenl. Ev., sec. 122. See also 1 Wharton's Crim. Law ( 9 Ed.) secs. 101 and 455.

But enough has been said to show that instructions upon manslaughter in the third and fourth degrees should be given. The judgment should therefore be reversed and the cause remanded. RAY, C. J., and SHERWOOD, J., concur in what I have said.