State v. May.

## THE STATE v. MAY, Appellant.

Division Two, March 17, 1903.

1. Change of Venue: MURDER: PREJUDICE OF INHABITANTS: DISCRETION OF COURT. Whether or not a change of venue shall be granted when an application is presented charging that defendant can not get a fair trial in the county owing to the prejudice of its inhabitants, rests so largely within the discretion of the trial court that the Supreme Court will not interfere unless it is made to appear that the trial court has abused its discretion in the matter; and in the absence of such a showing, a finding, as a fact, by the trial judge, that defendant could get a fair trial in the county will not be disturbed on appeal. And where a number of witnesses testified without objection that defendant could not get a fair trial in the county, and an equal number, perhaps more, including some introduced by defendant, that he could, a denial of the application was no such abuse of the court's discretion as will authorize the Supreme Court to interfere.

2. **Selecting Jury: WHEEL: COMPLETING PANEL.** If enough competent jurors for the regular panel are not drawn from the wheel by the county clerk, as provided by statute, it is the duty of the trial judge to make out and deliver to the sheriff a list of jurors sufficient to complete the panel of forty-seven.

3. **Unfriendly Witness: CROSS-EXAMINATION.** Where a state witness has testified that she is unfriendly to defendant and prejudiced against him, it is not an abuse of the discretion that must necessarily be left to the court, to refuse to permit her to be asked on cross-examination whether or not she desired to see defendant convicted, since her desire in the matter is immaterial.

4. **Manslaughter: INSTRUCTIONS FOR.** Where there was neither reasonable nor lawful provocation for the homicide the court should refuse to instruct on manslaughter in the fourth or any other degree. And where deceased was unarmed when shot, and was making no demonstration which indicated a purpose to assault defendant, and the only provocation that defendant had for shooting him was that a short time before deceased had called him a liar and used other abusive words, there was no provocation that authorized an instruction for manslaughter.

5. **Murder: In First Degree: DOUBT: INSTRUCTION FOR SECOND DEGREE MURDER.** The defendant asked and the court refused, to instruct the jury that "if you believe from the evidence the defendant to be guilty of either degree of murder, but entertain a doubt as to the degree, you should give the defendant the benefit of the doubt, and find him guilty of murder in the second degree". *Held, first,* that the instruction should have been refused for omitting the word "reasonable" before the word "doubt," the word "doubt" having such a variety of meaning, speculative and imaginary, as alone to be misleading; *second,* the instruction should have been refused because the court in other instructions given instructed fully on the subject of murder in the first and second degree, reasonable doubt, self defense, etc., and the conclusion is irresistible that the jury found from the evidence beyond a reasonable doubt that the killing was done willfully, deliberately, premeditatedly and with malice aforethought, that is, that defendant was guilty of murder in the first degree.

6. ——: ——: ——: **REASONABLE DOUBT.** A defendant can not be guilty beyond a reasonable doubt of two grades of murder. A verdict of guilty of murder of one grade is in effect a finding that he is not guilty of the other grade. And if the jury have been required before finding him guilty of any grade, to believe him guilty beyond a reasonable doubt, it is not error to refuse to further instruct them that, if they believe him guilty of either grade of murder but entertain a reasonable doubt as to which grade he is guilty of

they must find him guilty of murder in the second degree. For, under the general instruction, they can convict only of the degree of the offense as to which they entertain no reasonable doubt of his guilt.

7. ———: INSTRUCTION: PUNISHMENT. There is no impropriety in the court's telling the jury that they have "no responsibility with respect to the punishment for murder in the first degree".

8. ———: ———: DRUNKENNESS. Unless there is something to indicate that the jury were misled by an instruction which told them that "it is immaterial whether defendant was drinking or intoxicated at the time of the homicide, as drunkenness neither excuses, palliates nor effects crime," and that being so misled they convicted defendant on less or weaker evidence than they would otherwise have done, such instruction will not be held to be prejudicial, even though there was no evidence on which to base it.

9. ———: JURORS: PREJUDGING CASE. Where the trial court heard and considered the evidence in regard to charges that certain jurors had prejudged the case at the time they qualified, and held them not proven, the Supreme Court will not disturb that finding on appeal except where the evidence in support of the charges is very strong.

10. ———: INSTRUCTIONS. An excellent set of instructions on the subject of murder are set out in full in this case and approved.

Appeal from Buchanan Criminal Court.—*Hon. Benj. J. Casteel*, Judge.

AFFIRMED.

*James M. Wilson* and *Thomas B. Allen* for appellant.

(1) The lower court erred in refusing defendant's application for a change of venue. The petition for the change of venue was supported by the affidavit of the petitioner and by the affidavit of two credible, disinterested citizens of the county, as provided by statute, and the evidence int_oduced in support of the motion made

.a strong prima facie case which was not overcome or ·even met by the evidence introduced by the State. R. S. 1899, sec. 2576; State v. Goddard, 146 Mo. 177; State v. Hudspeth, 150 Mo. 12. (2) The lower court erred in overruling defendant's motion to quash the panel of forty-seven jurors. The list was improperly selected by the court. The names should have been drawn from the wheel. R. S. 1899, secs. 3792, 3793, 3794, 3795. (3) The lower court erred in refusing to allow defendant to fully cross-examine Mrs. Brown as to her desire to see defendant convicted, and in ruling, in the hearing of the jury, that such an investigation was an immaterial matter. (4) The lower court erred in refusing to instruct the jury upon manslaughter in the fourth degree. This instruction was fully warranted by the evidence. The' evidence shows that the homicide was the result of a sudden quarrel. State v. Berkley, 92 Mo. 41. (5) The lower court erred in refusing to instruct the jury that if they believed the defendant guilty of murder but entertained a doubt as to the degree, they should give the defendant the benefit of the dou⌣⌣, and find him guilty of murder in the second degree. 19 Am. and Eng. Ency. of Law (1 Ed.), 1079; State v. Anderson, 86 Mo. :309; Stout v. State, 90 Ind. 12; White v. State, 23 Texas App. 154. (6) Instruction number ten was erroneous. It told the jury, "if you find the defendant guilty of murder in the first degree, you will simply so state, as you are charged with no responsibility with respect to the punishment for murder in the first degree." It was proper that the jury should feel the weight of responsibility for defendant's fate, and for the trial court to tell them by an instruction that they were relieved of responsibility with respect to his punishment if they found him guilty of murder in the first degree was to remove that which has always been the principal safeguard to both the State and the defendant. (7) The lower court erred in giving to the jury instruction number eleven, that "it is immaterial in this case whether defendant was drinking or intoxicated, at the time of the homicide spoken of in the evidence, as drunkenness

neither excuses, palliates nor affects crime.'' There was no evidence whatever that the defendant was drunk or intoxicated. This was prejudicial, because from it the jury inferred that defendant was attempting to excuse or palliate his crime by pretending drunkenness. (8) The affidavits and evidence in support of defendant's motion for a new trial showed that jurors Rogers and Stallard had prejudged defendant's case against him at the time they qualified as jurors, and a new trial should have been granted on this showing. (9) The verdict of the jury is not supported by the evidence. The shooting was done in a wordy war lasting but a few seconds, and shown by all the evidence to have been while the defendant was laboring under great excitement, and while confronted by Babe Martin armed and coolly awaiting a conflict, and deceased advancing from behind his brother and saying: ''Turn him loose, now is as good time as any.''

*Edward C. Crow*, Attorney-General, *Sam B. Jeffries*, Assistant Attorney-General, and *Jerry M. Jeffries* for the State.

(1) Defendant's application for a change of venue was not supported by the evidence offered to uphold it. The evidence, on the other hand, showed that defendant could get a fair and impartial trial in Buchanan county, and that the inhabitants of that county were not prejudiced against defendant in the sense as declared by law to be grounds for a change of venue. The right to a change of venue is purely statutory and the party seeking it must comply with the statutory requirements. State v. Lanahan, 144 Mo. 31; State v. Headrick, 149 Mo. 396. The action of the trial court in disallowing the change of venue will not be disturbed, unless it is shown that the discretion of the trial judge was abused. State v. Thompson, 141 Mo. 408; State v. Hudspeth, 150 Mo. 12. (2) The lower court did not err in overruling defendant's motion to quash the panel of forty-seven jurors. The list was properly selected. The statute

relating to the selection of jurors is directory and not mandatory. State v. Albright, 144 Mo. 638; State v. Gleason, 88 Mo. 582. The action of the court in making out and delivering to the proper officer (the sheriff) a list of jurors, after the panel of special jurors had been exhausted, was in strict accordance with the law. R. S. 1899, sec. 3797. The right to challenge a juror is not the right to select a juror. Thompson & Merriam on Juries, sec. 159; United States v. Marhant, 12 Wheat. 480. Where the statute regulates the method of selecting the jury, the common-law method is not excluded, thereby, but may be followed, if any exigencies arise. White v. People, 81 Ill. 333; Wilson v. State, 32 Tex. 112; State v. Marsh, 13 Kans. 596. It is well settled in this State that the statutory method of summoning, drawing, and impaneling jurors is directory and not mandatory, and if the jurors are qualified to serve as such, and it does not appear that the defendant was prejudiced, the judgment will not be reversed at his instance because of irregularity or informality in their selection. State v. Matthews, 88 Mo. 121; State v. Jennings, 98 Mo. 497; State v. Jones, 61 Mo. 232; State v. Gleason, 88 Mo. 582. A trial court has the right to direct its officers to summon jurors as the dispatch of business may require. State v. Gleason, 88 Mo. 582; State v. Jones, 61 Mo. 232. (3) The evidence does not show that the homicide was the result of a sudden quarrel. The evidence shows nothing but murder in the first degree, and giving full weight to defendant's evidence, barely suggests murder in the second degree. Under the evidence defendant was either guilty of murder or was entirely innocent. Kelley's Criminal Law, sec. 520; State v. Wilson, 98 Mo. 44. (4) Defendant contends that the court should have instructed the jury that if they found defendant guilty, but entertained a doubt as to the degree, they should give him the benefit of that doubt and find him guilty in the second degree. The court gave the approved instruction upon reasonable doubt. This covered the whole case and was sufficient. An instruction is properly re-

fused when the same principle is contained in another given. State v. Elliot, 90 Mo. 350; State v. Parker, 106 Mo. 217; State v. Gamble, 119 Mo. 427. An incorrect instruction on a lower grade of homicide than that of which the defendant was convicted, is harmless error. Here the evidence clearly sustains the charge of murder in the first degree. State v. Turlington, 102 Mo. 642; State v. Buchler, 103 Mo. 203. (5) The proof does not show that jurors Rogers and Stallard had prejudged defendant's case against him at the time they qualified as jurors, but on the other hand shows that they were fully qualified to act as jurors in the trial of the case. To secure a new trial on such a charge, the burden is upon defendant to establish the truth of his allegations. State v. Brooks, 92 Mo. 542; State v. Cook, 84 Mo. 40. Such questions are always determined by the trial court, and that finding will not be disturbed unless it is shown to be clearly unwarranted. State v. Brooks, supra; State v. Noland, 111 Mo. 473. Where evidence pro and con is introduced upon the question whether a juror was prejudiced, the finding of the trial court is conclusive. State v. Dusenberry, 112 Mo. 277; State v. Williamson, 106 Mo. 162.

BURGESS, J.—From a conviction of murder in the first degree for having shot to death with a pistol at Buchanan county on December 27, 1900, one John R. Martin, defendant appeals. The cause was here on a former appeal. [168 Mo. 122.]

The shooting occurred at the house of Peter Jones, at night when there was a dance in progress there. Jones was a farmer and the grown sons and daughters of himself and wife, of whom there were several, together with a number of neighboring young people, were in attendance upon the occasion. Defendant was in the service of Jones as a farm hand at that time. Whiskey seems to have been freely used, but no one was intoxicated. May, the defendant, was acting as floor manager, and about eleven o'clock a square dance with six or eight couples on the

floor was in progress.   Engaged in the dance was the deceased, John Robert Martin, who was dancing with a Miss Bettie Simmons as his partner.   A certain figure in the dance was called in which Martin and his partner should have taken part, but did not do so, but remained standing in their places upon the floor.   No notice apparently was taken of it, and no disturbance made by Martin.   Very soon thereafter, May, who had been calling the dance, walked over to Martin and said something to him.   When defendant turned and started away from deceased he was heard to say, "If Martin said he (defendant) had slighted him he was a damned liar."   The deceased in reply to this remark said that defendant was a liar.   The defendant, at this remark by deceased, became angry, if not already so, and signaled the music to stop, which was done. He then at once started towards deceased, at the same time remarking, he "did not allow any damned man to call him a liar."   Two of the Jones boys and a man named Gantt ran and grabbed May, and Babe Martin, a brother of Robert Martin, stepped over by the side of and in front of the deceased, and said to him to be quiet and not have any trouble.   The evidence shows the deceased stood there by his brother and did not try to assault the defendant, but did make some offensive remarks directed to the defendant.   The deceased was unarmed and stood most of the time just where he had been standing when the trouble commenced.   The Jones boys and others attempted to hold the defendant, and Mrs. Jones came in and asked him to desist, and she testifies he said he would.   Just about this time the defendant, being eight or ten feet from the deceased, said to the deceased he would get him (meaning the deceased) in the morning.   Mrs. Jones about this time left the room and while her sons were still trying to hold the defendant, he pulled a pistol from his right hip pocket, and placing it under the arm of one of the Jones boys, who was in front of and between the defendant and the deceased, fired at John Robert Martin, the ball striking him in the front of the forehead

above the eye and entering the brain. The deceased fell unconscious and never afterwards spoke, dying the next day about three o'clock. When the shot was fired the Jones boys released May and sought safety for themselves. Babe Martin, a brother of John Robert Martin, the deceased, stood by the side of him when he was shot. The evidence is somewhat conflicting as to who fired the second shot, whether Babe Martin fired it at May or the defendant fired it at Babe Martin, but the preponderance of the testimony shows that there was a little pause between the first and second shots. Several witnesses testify that May fired the second shot at Babe Martin; one or two testify that Babe Martin fired the second shot at the defendant. But any way, the firing began again and Babe Martin and the defendant fired six or eight shots at each other, resulting in the defendant being wounded in the left shoulder and one of his hands, and one McGee, a looker-on, being shot through the ear and slightly but not seriously wounded. While the firing was going on, the defendant backed into an adjoining room and soon passed into a hall and out of the house, and as far as the evidence discloses was not seen again until the next evening about sunset when he returned to Jones's house, and old Mr. Jones and one of his sons took the defendant to St. Joseph where he was delivered to the authorities and his wounds were dressed.

The court, over the objection and exception of defendant, instructed the jury as follows:

"The court instructs the jury that the indictment in the case was filed on the 5th day of March, 1901, and charges the defendant with murder in the first degree. Under the evidence adduced, however, it will be necessary for you to determine, in the event you find the defendant guilty of any offense, whether he should be convicted of the specific offense charged in the indictment, or for murder in the second degree.

"Murder in the first degree is the killing of a human being willfully, deliberately, premeditatedly, and with malice aforethought.

"Murder in the second degree has all the elements of murder in the first degree except that of deliberation.

" 'Willfully' as used in these instructions, means intentionally; that is, not accidentally. Therefore, if the defendant intended to kill, such killing is willful.

"In the absence of qualifying facts and circumstances, the law presumes that a person intends the ordinary and probable result of his acts.

"If you believe from the evidence beyond a reasonable doubt that the defendant, with a pistol, shot John Robert Martin in a vital part and killed him, you will find that the defendant intended to kill him, unless the facts and circumstances given in evidence show to the contrary.

" 'Deliberately' means in a cool state of the blood; that is, not in a heated state of the blood caused by a lawful provocation. It does not mean brooded over, considered or reflected upon for a week, a day or an hour, but it means an intent to kill, executed by a party not under the influence of violent passion suddenly aroused by some lawful provocation, but in the furtherance of a formed design to gratify a feeling of revenge, or to accomplish some other unlawful purpose.

" 'Premeditatedly' means thought of beforehand for any length of time, however short.

" 'Malice,' as used in these instructions, does not mean mere spite, ill will or dislike, as it is ordinarily understood, but it means that condition of the mind which prompts one person to take the life of another without just cause or justification, and it signifies a state or disposition which shows a heart regardless of social duty and fatally bent on mischief.

" 'Malice aforethought' means that the act was done with malice and premeditation.

"Keeping in view the foregoing definitions as a basis, the court submits to you the further following instructions, to-wit:

"1. The court instructs the jury that the defendant is presumed to be innocent of any offense, and this

presumption continues throughout the case until overcome by evidence showing him guilty beyond a reasonable doubt; and if you have a reasonable doubt of the defendant's guilt, you must acquit him; but such doubt, to justify acquittal must be a substantial doubt founded on the evidence, and not a mere possibility of defendant's innocence.

"2. If you believe and find from the evidence that, at the county of Buchanan and State of Missouri, at any time prior to the day on which the indictment was filed, the defendant, Charles May, in the manner and by the means specified in the indictment, shot and wounded the deceased, John Robert Martin, and shall further believe and find from the evidence that such shooting was done willfully, deliberately, premeditatedly, and with malice aforethought, and shall further believe and find from the evidence that within one year and a day thereafter, and before the filing of the indictment in this case, the deceased, John Robert Martin, at the county of Buchanan aforesaid, died in consequence of such shooting and wounding done by the defendant, you will find the defendant guilty of murder in the first degree.

"3. He who willfully, that is, intentionally, uses upon another at some vital part, a deadly weapon, as a loaded firearm, must in the absence of qualifying facts, be presumed to know that the effect is likely to be death; and knowing this, must be presumed to intend death, which is the probable and ordinary consequences of such an act; and if such deadly weapon is used without just cause or provocation, he must be presumed to do it wickedly or from a bad heart. If, therefore, the jury believe that defendant took the life of John Robert Martin by shooting him in a vital part, with a revolver loaded with gunpowder and leaden bullets, with a manifest design to use such weapon upon him, and with sufficient time to deliberate and fully form the conscious purpose to kill, and without sufficient reason or cause or extenuation, then such killing is murder in the first degree; and, while it devolves upon the State to prove will-

fulness, deliberation, premeditation and malice aforethought (all of which are necessary to constitute murder in the first degree), yet these need not be proved by direct evidence, but may be deduced from all the facts and circumstances attending the killing; and if the jury can satisfactorily and reasonably infer their existence from all the evidence, they will be warranted in finding the defendant guilty of murder in the first degree.

"4. If you believe and find from the evidence that within the time and at the place specified in the preceding instruction number 2, the defendant, in the manner and by the means specified in the indictment shot and wounded the deceased, John Robert Martin, and shall further believe that such shooting and wounding was done willfully, premeditatedly, and with malice aforethought, but without deliberation, and you shall further believe and find from the evidence that, within one year and a day thereafter, and before the filing of the indictment, the deceased, John Robert Martin, died from the effects of such shooting and wounding, at the county aforesaid, you will find the defendant guilty of murder in the second degree.

"5. If the jury believe from the evidence that the defendant, Charles May, intentionally killed John Robert Martin by shooting him in the head with a pistol, and that such pistol was a deadly weapon, then the law presumes that such killing was murder in the second degree, in the absence of evidence to the contrary.

"6. Although you may believe from the evidence that the defendant, Charles May, assaulted and killed John Robert Martin, yet, if you shall further believe from the evidence that such killing was done in self-defense, as hereinafter defined, then you will acquit the defendant.

"On the question of self-defense, you are instructed that if, at the time the defendant, Charles May, assaulted and killed John Robert Martin, he, the defendant, Charles May, had reasonable cause to apprehend a design on the part of John Robert Martin, or his brother

Vol 172 mo—41.

Babe Martin, to take his life, or to do him some great personal injury, and that there was reasonable cause for him to apprehend immediate danger of such design being accomplished, and that to avert such apprehended danger he shot John Robert Martin, and that at the time of shooting he had reasonable cause to believe and did believe that it was necessary for him to shoot to protect himself from such apprehended danger, you will acquit the defendant on the ground of self-defense.  It is not necessary that the danger should have been actual or real, or that the danger should have been impending and about to fall; all that is necessary is that the defendant, Charles May, had cause to believe and did believe those facts.  On the other hand, it is not enough that the defendant, Charles May, should have so believed; he must have had reasonable cause for so believing.  Whether or not he had reasonable cause for so believing is for you to determine, under all the facts and circumstances given in evidence.  If you shall believe from the evidence that the defendant, Charles May, did not have reasonable cause to so believe, you can not acquit him on the ground of self-defense, although you may believe that the defendant really thought he was in danger.

"7.  The court instructs the jury that the indictment in this case is a mere formal charge, and is no evidence whatever of defendant's guilt.

"8.  The court instructs the jury that the defendant is a competent witness in his own behalf, and you should consider his testimony in connection with the other evidence given on the trial; in determining what weight you will give to defendant's testimony, you may take into consideration the fact that he is the defendant on trial, and interested in the result of the prosecution.

"9.  The jury are instructed that they are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony; and in determining such credibility and weight you will take into consideration the character of the witness, his or her manner on the witness stand, his or her relation to or feel-

ing toward the defendant or the prosecuting witness, the probability or improbability of the witness's statements, the opportunity that the witness had for ascertaining the facts to which he or she has testified, together with all the other facts and circumstances detailed in evidence; and if you believe that any witness has willfully sworn falsely to any material fact in the case, you are at liberty to reject any portion or all of such witness's testimony.

"10.  If you find the defendant guilty of murder in the first degree you will simply so state in your verdict, as you are charged with no responsibility with respect to the punishment for murder in the first degree.  If you find the defendant guilty of murder in the second degree you will so state in your verdict, and assess his punishment at imprisonment in the State penitentiary for any term not less than ten years.

"11.  It is immaterial in this case whether the defendant was drinking or intoxicated at the time of the homicide spoken of in the evidence, as drunkenness neither excuses, palliates nor affects a crime."

The record discloses that defendant then asked the court to instruct for manslaughter, which it declined to do. He then asked the court to give the following instruction: "If the jury believe from the evidence the defendant to be guilty of either degree of murder, but entertain a doubt as to the degree, you should give the defendant the benefit of the doubt and find him guilty of murder in the second degree."

The defendant also requested the court to instruct the jury upon all the law of the case, and the court refusing to further instruct, the defendant excepted to its refusal to instruct for manslaughter, to give the instruction asked by him, and to the refusal of the court to further instruct the jury upon the law of the case.

I.

The first question presented for our consideration on this appeal is with respect to the action of the trial

court in overruling defendant's application for a change of venue which he claims was error. The application was bottomed upon the ground of the prejudice of the inhabitants of the counties of Buchanan and Platte, to such an extent that defendant could not have a fair trial in either of said counties; and was supported by the affidavit of the defendant and two credible witnesses; besides a number of witnesses testified without objection in support of the motion to facts which tended to sustain it, while equally as many, if not more, including several witnesses introduced by the defendant, testified to the contrary, and to facts which tended to show that defendant could get a fair trial in the county of Buchanan. Whether or not a change of venue shall be granted, rests so much in the discretion of the trial court that the Supreme Court will not interfere in the absence of a showing that such discretion was abusively exercised (State v. Thompson, 141 Mo. 408; State v. Albright, 144 Mo. 638), and the court having found as a fact that defendant could get a fair trial in the county of Buchanan, that finding will not, under the circumstances, be disturbed. [State v. Tettaton, 159 Mo. 354.]

## II.

It appears from the record that on July 8, 1902, the court, on the motion of defendant, ordered a special venire returnable July 14th, and forty-seven names were by the county clerk, under the supervision of the judge of the court, drawn from the wheel, and said jurors or so many of them as could be found by the sheriff, were examined upon their *voir dire* and only ten of them were found to be qualified, whereupon the court announced that he would select the names of the remaining jurors to be summoned; thereupon the defendant requested the court to procure the remaining number of the forty-seven jurors by drawing them from the wheel until the entire number should be found qualified, and protested against the court selecting the names in any other man-

ner. The said request of defendant was refused and defendant saved his exceptions. Thereupon the court made out a list of names of persons to be summoned as jurors, making his own selection of names without drawing the same from the wheel, and gave the list so made up to the sheriff to be returned into court.

The panel of forty-seven jurors being completed from the list summoned by the sheriff as aforesaid, the list was presented to defendant's attorneys on July 15th in order that they might complete their challenge, and thereupon defendant filed his motion to quash the panel for the reason "that said jurors, all but ten thereof, have not been selected by their names having been drawn from the wheel by the county clerk in the presence of the court, as the law provides, but their names have been selected by the court and handed to the sheriff, and by him summoned." Said motion to quash was overruled, and defendant again excepted.

Defendant claims that the panel of forty-seven jurors was improperly selected by the court, and that their names should have been drawn from the wheel as provided by sections 3792, 3793, 3794, and 3795, Revised Statutes 1899.

Section 3795, supra, is: "Whenever any circuit court or court having jurisdiction of felony cases desires a panel of jurors, or any part thereof, said court, or in vacation, the judges thereof, shall, except as hereinafter provided, so order, and shall designate in said order the number of jurors desired; whereupon the clerk of the county court, so situated as to be unable to see the names on such card, and in the presence of the judge of any court to which this article may apply, shall draw that number of cards from the wheel or box; a list of the names so drawn from the wheel and preserved by the clerk of the county court, and a certified copy of the same shall by said clerk of the county court be delivered to the clerk of the court for which the jurors were drawn, who shall issue a venire for said jurors and deliver the same to the sheriff or other proper officer of the court."

Section 3797 provides that "when a jury for the trial of a cause can not be made up from the regular panel, the judge of the court before whom the cause is pending may make out and deliver to the proper officer a list of jurors sufficient to complete the panel, but such extra jurors shall be summoned only for the trial of that particular cause."

Now, when it was ascertained that there were only ten competent jurors of the fifty-seven whose names were drawn from the wheel, the court did just what he was authorized to do by section 3797, supra, in case a jury for the trial of a cause could not be made up from the regular panel, that is, he made out and delivered to the proper officer a list of jurors sufficient to complete the panel of forty-seven, and the fact that the jury ordered was a special jury, as contradistinguished from a regular one, does not, we think, render that section of the statute inapplicable in the case at bar, but it should be given a more liberal construction, and held to apply alike to both regular and special juries, for such was the evident purpose of the Legislature. There is no reason why it should be otherwise, because such is the spirit of the statute and in accordance with the practice in the circuit and criminal courts of this State. Moreover, "the statute regulating the summoning of jurors has always been construed merely as directory." [State v. Albright, 144 Mo. 638; Samuels v. State, 3 Mo. 68; State v. Pitts, 58 Mo. 556; State v. Jones, 61 Mo. 232; State v. Knight, 61 Mo. 373; State v. Williams, 136 Mo. 307, and cases cited.]

## III.

It is insisted that error was committed in the refusal by the court to allow defendant to fully cross-examine Mrs. Kate Brown, a witness for the State, as to her desire to see defendant convicted, and ruling in the hearing of the jury that such an investigation was an immaterial matter. This witness had already stated on her cross-examination that she did not feel very

friendly towards defendant, and whether or not she had been or was then anxious to see him punished could have added nothing to the force of that expression.

It is not practicable by any general rule to fix an exact limit which should govern the admission of such evidence, and necessarily it must be left in a large measure to the discretion of the trial court. In this instance we are not prepared to say that the court went beyond the legitimate margin in its ruling under discussion. The testimony of the witness showed that she was prejudiced against the defendant, and whether or not she desired to see him punished was immaterial. But in any event the court was not guilty of any impropriety in announcing from the bench, and in the presence of the jury, that the interrogation propounded to the witness was with respect to an immaterial matter, for it would be utterly impracticable for a trial court to have the jury retire whenever it should become necessary to rule upon a question as to the admission or exclusion of evidence.

## IV.

Nor do we think the court erred in refusing to instruct upon manslaughter in the fourth or any other degree. There was no evidence to warrant such an instruction. As holding otherwise, however, defendant relies upon the case of State v. Berkley, 92 Mo. 41, in which it is said that the evidence tends to show that the killing was the result of a sudden quarrel which furnished a base for an instruction for a lower grade of homicide than murder in the second degree. But the facts connected with the homicide in that case are not stated in the opinion, and we must conclude that the evidence adduced justified such an instruction. But in the case at bar the evidence does not show that the homicide was the result of a sudden quarrel, or that there was any reasonable or lawful provocation therefor. Deceased was unarmed when shot, and was making no demonstrations whatever evincing a purpose to assault

defendant, but was standing still, and the only provocation that defendant had for shooting him was that deceased had a short time before he was killed said in relation to an epithet applied to him by defendant that "You are damned liar," that "You are another one," which was neither reasonable nor lawful provocation for the homicide.

In State v. Wilson, 98 Mo. 440. it is said:

"In homicide, an intent to kill is an essential element to make the offense murder in the first or second degree, and so the court instructed the jury in this case. [State v. Gassert, 65 Mo. 352; State v. Peak, 85 Mo. 190.] Murder in the second degree, however, includes not only homicides with intent to kill, in the heat of passion caused by a provocation short of lawful provocation but that would naturally excite such heat, but also all those cases of murder at common law not declared by statute to be murder in the first degree or manslaughter; in which class is included cases where the act done is malicious and manifestly dangerous to human life and does produce death, although the intent may have been only to do great bodily harm. In such cases the law presumes the intent to kill. [State v. O'Hara, 92 Mo. 59; State v. Wieners, 66 Mo. 13; Wharton's Crim. Law (8 Ed.), sec. 388.] The heat of passion that will take away the malice from the act thus manifestly dangerous to human life, and reduce the offense to manslaughter, must be caused by lawful provocation and as we have seen, there was no such provocation in this case."

## V.

Defendant claims that the court erred in refusing to instruct the jury that if they believed the defendant guilty of murder but entertained *a doubt* as to the degree, they should give the defendant the benefit of the doubt, and find him guilty of murder in the second degree. This contention is substantially in the language of the instruction asked by defendant upon this theory of the case.

It will be observed that the contention is that the instruction, although omitting the word *"reasonable"* before the word *"doubt,"* should have been given.    19 Am. and Eng. Ency. of Law, 1079, is relied upon in support of this position.    But, the rule which is in effect announced in that work, is, that such a doubt in order that a defendant may have the benefit of it, and be convicted of the lower of two grades of the same offense must be a *reasonable* doubt, and not simply a "doubt," which applies as well to one kind of doubt as another.

The same rule is announced in Blashfield on Instructions to Juries, sec. 306, that is, to entitle the defendant to the benefit of a doubt as to the lower of the grades of the offense charged in the indictment, the doubt must be a *reasonable* doubt in the minds of the jury as to the degree of the offense which the defendant has committed.

Stout v. State, 90 Ind. 12, is another authority relied upon by defendant in which the same rule is announced, that is, that when there is a doubt of which of two or more degrees of an offense the defendant on trial is guilty, in order to entitle him to a conviction of the lower degree, the doubt must be a reasonable one, that is, a substantial doubt.

State v. Anderson, 86 Mo. 309, is another case relied upon by defendant.    In that case an instruction was given on the part of the State which told the jury, "If you believe from all the evidence in the case, beyond a reasonable doubt, that the defendants are guilty of murder in the first degree or second degree, as these offenses have been defined in these instructions, but have a doubt as to the degree of offense of which the defendants are guilty, the jury will give them the benefit of such doubt, and find them guilty of the less offense," was held not to be erroneous.

In speaking of this instruction the court said: "It is objected to the first of the above instructions, that it permitted a conviction for murder in the second degree, if the jury, believing them guilty of murder, had a doubt as to the degree of murder of which they were guilty.

If the evidence satisfied the jury, beyond a reasonable doubt, that defendants intentionally and maliciously killed Rea, and the only doubt they had was, whether it was done with the deliberation necessary to constitute the homicide murder in the first degree, but having none whatever that it was committed with the premeditation which made the crime murder in the second degree, it was their duty, as the court instructed, to find them guilty of the latter crime. Can it be that it was the duty of the jury, so believing from the evidence, to acquit the defendant? Certainly not.''

In Humbree v. The State, 81 Ala. 67, the only exception raised by the record was the refusal of the court to instruct the jury, that if there was ''any doubt'' as to whether the offense was committed within twelve months before the commencement of the prosecution, they must acquit. The court observed, ''A doubt which demands an acquittal must be a reasonable doubt. . . . A possible or speculative doubt is not sufficient. The charge is misleading by reason of failing to distinguish the degrees of doubt, and was properly refused.''

So, in the case of Kidd v. State, 83 Ala. 60, the trial court at the request of the defendant charged the jury in effect that *any doubt* arising out of the evidence requires the jury to acquit. The Supreme Court said: ''It is only a reasonable doubt of a defendant's guilt which entitles him to an acquittal, not a possible, speculative, or imaginary doubt, as implied by this charge, which for this reason was misleading.''

So with respect to the word ''doubt'' used in the instruction under consideration, it has such a variety of meanings, speculative and imaginary, that it was misleading, and by no means a substitute for the words ''substantial doubt,'' which have a well understood meaning and which must exist in the minds of the jury as to the guilt of the defendant on trial in any criminal case before they can find him not guilty. The instruction was misleading and properly refused. But the instruction was properly refused, we think, for the further reasons that the court instructed the jury very fully

upon murder in the first and second degree, self-defense, and reasonable doubt as to defendant's guilt, and the conclusion is irresistible from their verdict that they found from the evidence, and that beyond a reasonable doubt, that the killing was done willfully, deliberately, premeditatedly and with malice aforethought, and, therefore defendant was guilty of murder in the first degree, otherwise they could but have found him guilty, if at all, of murder in the second degree.

It is illogical to say that a person may be guilty of two grades of an offense in the same case, where the ingredients of the grades are so different as in murder in the first and second degree, in the first of which the killing must be done with deliberation, in the other without deliberation, but with malice and premeditation. Then if the jury believe him guilty beyond a reasonable doubt, and are authorized under the instructions to find him guilty of either degree of which the evidence shows him to be guilty (and they can not convict unless they so find), it does seem to us that there is no reason for an instruction telling them that if they have a reasonable doubt as to which of two degrees of the offense the defendant is guilty they will give him the benefit of the doubt and find him guilty of the lower grade, for the very obvious reason that if they have a reasonable doubt as to his guilt of either grade of the offense, they are bound to find him not guilty of that grade, and, to find him guilty of the other grade, if satisfied of his guilt as to that. A verdict of guilty upon one grade of the offense, is in effect a finding that he is not guilty of the other.

In short, a person can not be guilty beyond a reasonable doubt of two grades of the same offense, for instance murder in the first and second degree, for the line of demarkation between the two grades is well defined, as by the instructions in this case, that is, the homicide in order to constitute murder in the first degree must be committed with deliberation, in the second degree without deliberation but with malice and premeditation. There is, therefore, under such circumstances,

no necessity for an instruction, and no error in the refusal of one, to the effect that if the jury believe the defendant guilty but entertain a reasonable doubt as to which of two grades of the offense he is guilty they will give him the benefit of the doubt and find him guilty of the lower grade of the offense, for they can only convict him of that grade, if either, of which they may believe him guilty beyond a reasonable doubt, which is inconsistent with the idea of the existence in the minds of the jury of a reasonable doubt with respect to the grade of offense of which defendant is guilty, for it must follow that if the defendant is guilty of one grade of the offense, he is not of the other, and if they entertain a reasonable doubt of his guilt of either grade they can not convict of that grade.

## VI.

It is contended that instruction numbered ten is erroneous, in that it told the jury that "if you find the defendant guilty of murder in the first degree, you will simply so state, as you are charged with no responsibility with respect to the punishment for murder in the first degree," but this court has upon several occasions ruled otherwise. Thus in State v. Avery, 113 Mo. 501, it is said: "In cases of murder in the first degree the punishment is fixed by statute, and the jury trying the case has nothing whatever to do with it, and we see no impropriety in the court so stating in an instruction to them." [See, also, State v. Howard, 118 Mo. 127; State v. Inks, 135 Mo. 678; Blashfield, Instructions to Juries, sec. 186.]

## VII.

Instructions numbered 11 is complained of on the ground that it told the jury that "it is immaterial in this case whether defendant was drinking, or intoxicated, at the time of the homicide spoken of in the evidence, as drunkenness neither excuses, palliates nor af-

fects crime.'' It is said, in the first place, that there was no evidence upon which to bottom it, and, in the second place, that it was prejudicial to defendant because from it the jury inferred that defendant was attempting to excuse or palliate his crime by pretending drunkenness. Conceding that there was not evidence upon which to base the instruction, we are unable to see how defendant could have been prejudiced by it or how the jury could have inferred from it that defendant was attempting to excuse or palliate his crime by pretending drunkenness, nor do we believe that defendant was prejudiced by it or the jury misled, and unless they were misled, and by reason thereof convicted the defendant on less or weaker evidence than they otherwise would have done, we can not say there was prejudicial error.

## VIII.

The verdict of the jury is assailed upon the ground that two of the jurors, viz., Rogers and Stallard, had prejudged the case at the time they qualified as jurors. The evidence in support of these charges against either of said jurors, and in rebuttal thereto, was heard and considered by the court, and it held that the charges against them were not proven. Under such circumstances the finding of the trial court will not be disturbed (State v. Gonce, 87 Mo. 627; State v. Dusenberry, 112 Mo. 277; State v. Soper, 148 Mo. 217); especially, unless a stronger case than the one here presented comes before this court.

## IX.

A final contention is that the verdict of the jury is not supported by the evidence. To this position we can not agree, for the reason that the evidence made out a clear case of murder in the first degree, and fully justified the jury in so finding.

Finding no reversible error in the record we affirm the judgment and direct that the sentence pronounced by the law be executed. All concur.